IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CAROL ANN TOWNE,

       Plaintiff,

v.                                      Case No.: 3:11-cv-0959

MICHAEL J. ASTRUE,
**Commissioner of the Social
Security Administration,**

       Defendant.

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security (hereinafter the "Commissioner") denying Claimant's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-433. (ECF No. 2). Both parties have consented in writing to a decision by the United States Magistrate Judge. (ECF Nos. 7, 9). The case is presently before the Court on the parties' cross motions for judgment on the pleadings as articulated in their briefs. (ECF Nos. 14, 15).

The Court has fully considered the evidence and the arguments of counsel. For the reasons that follow, the Court finds that the decision of the Commissioner is supported by substantial evidence and should be affirmed.

### I.   Procedural History

Plaintiff, Carol Ann Towne (hereinafter "Claimant), filed an application for DIB on November 19, 2009, alleging a disability onset date of February 1, 2007 due to

"bipolar, ADD, fibromyalgia, arthritis, depression, endometriosis, epstein barr virus, high blood pressure, chronic fatigue, high anxiety, sinus allergies, possible benign fibrois [sic] tumors in uterus, problems with left arm, and knee problems." (Tr. at 191). The Social Security Administration (hereinafter "SSA") denied the application initially and upon reconsideration (Tr. at 10). Thereafter, Claimant requested a hearing before an administrative law judge (hereinafter "ALJ") and appeared before the Honorable Toby J. Buel, Sr. on November 19, 2010. (Tr. at 22–48). By decision dated June 29, 2011, the ALJ denied Claimant's application. (Tr. at 10–15). The ALJ's decision became the final decision of the Commissioner on October 4, 2011 when the Appeals Council denied Claimant's request for review. (Tr. at 1–5). Claimant timely filed the present civil action seeking judicial review of the administrative decision pursuant to 42 U.S.C. §405(g). The Commissioner filed an Answer and a Transcript of the Administrative Proceedings, and both parties filed their Briefs in Support of Judgment on the Pleadings. Consequently, the matter is ripe for resolution.

II. **Claimant's Background**

On February 1, 2007, the alleged date of disability onset, Claimant was 51 years old. (Tr. at 31). She graduated from high school and completed three years of college. (Tr. at 32). Claimant's prior work experience included bookkeeping and bartending, as well as work in a salon doing nails and self-employment in a home-cleaning business. (Tr. at 192). According to Claimant, her medical and psychiatric impairments became severe in February 2007, causing her to substantially limit her work activity. (Tr. at 191). At that time, she reduced the number of homes she cleaned from five per week to three per week. She stopped working entirely in October, 2009, when she moved from Florida to West Virginia in order to care for her elderly father. (Tr. at 515).

### III. Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. See *Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A).

The Social Security regulations establish a five step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment or combination of impairments.[1] *Id.* § 404.1520(c). If a severe impairment or combination of impairments is present, the third inquiry is whether the impairment or combination of impairments meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. (the "'Listing") *Id.* § 404.1520(d). If the impairment or combination of impairments does, then the claimant is found disabled and awarded benefits. If not, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e).

---

[1] An impairment or combination of impairments is severe when it significantly limits a claimant's ability to do basic work activities. "Basic work activities" include, for example, (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b).

After making the RFC finding, the ALJ's next step is to ascertain whether the claimant's impairment prevents the performance of past relevant work. *Id.* § 404.1520(f). If the impairment does prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to establish, as the final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. *Id.* § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868–69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger,* 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at every level in the administrative review," including the ALJ level. 20 C.F.R. § 404.1520a. First, the ALJ evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. If such impairment exists, the ALJ documents its findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to specific criteria set out in the regulation. Third, after rating the degree of functional limitation from the claimant's impairment, the ALJ determines the severity of the limitation. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning, and concentration, persistence or pace) and "none" in the fourth (episodes of decompensation) will result in a finding that the

impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1).

Next, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's mental residual functional capacity. 20 C.F.R. § 404.1520a(d)(3). The regulation requires the ALJ to incorporate into the written decision "the pertinent findings and conclusion based on the technique ... The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section. 20 C.F.R. § 404.1520a(e)(2).

In the present case, the ALJ made an initial finding that Claimant met the insured status requirements of the Social Security Act through June 30, 2007. (Tr. at 12). Therefore, Claimant was required to show that she was disabled on or before that date in order to receive a favorable ruling on her application. At the first step of the sequential evaluation, the ALJ acknowledged that Claimant had not engaged in substantial gainful activity since February 1, 2007, the alleged disability onset date. (Tr. at 12, Finding No. 2). Turning to the second step of the evaluation, the ALJ found that Claimant had medically determinable impairments of hypertension, gastroesophageal reflux disease, and anxiety; however, Claimant failed to demonstrate that these impairments, separately or in combination, were severe enough to significantly limit her

ability to perform basic work activities prior to her date last insured. (Tr. at 12-15, Finding Nos. 3, 4). Without evidence to corroborate the existence of a severe impairment or combination of impairments, the ALJ determined that Claimant was not disabled on or before June 30, 2007 and, thus, was not entitled to disability insurance benefits. (Tr. at 15, Finding No. 5).

### IV. Challenge to the Commissioner's Decision

Claimant raises two challenges to the Commissioner's decision. First, Claimant argues that the ALJ failed to fully develop the record regarding Claimant's arthritis, depression, anxiety, and chronic musculoskeletal pain. In Claimant's view, the ALJ ignored her testimony and the opinion of a non-examining expert, Dr. Bruce Guberman, both of which substantiated her disability claim. (ECF No. 14 at 6-8). Second, Claimant asserts that the ALJ failed to consider and properly evaluate her combination of impairments "under the combination of impairments listing." (*Id.* at 8-9).

In response, the Commissioner emphasizes the lack of medical evidence supporting Claimant's threshold showing of severity. He stresses that Claimant continued to clean houses until October 2009 and only quit working at that time because she moved to West Virginia to assist her sickly father. (ECF No. 15 at 9-10). The Commissioner further asserts the ALJ properly weighed Claimant's testimony and the opinion of Dr. Guberman. Given the lack of objective medical evidence pertinent to the time frame at issue, the Commissioner argues that the ALJ correctly discounted Claimant's testimony and the opinion of the non-treating, non-examining medical source. (Id. at 10-12).

### V. Scope of Review

The issue before the Court is whether the final decision of the Commissioner is

based upon an appropriate application of the law and is supported by substantial evidence. In *Blalock v. Richardson,* the Fourth Circuit Court of Appeals defined "substantial evidence" as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence. Instead, the Court's function is to scrutinize the totality of the record and determine whether substantial evidence sustains the conclusion of the Commissioner. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). The decision for the Court to make is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart,* 434 F. 3d 650, 653 (4th Cir. 2005), citing *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 2001). If substantial evidence exists, then the Court must affirm the decision of the Commissioner "even should the court disagree with such decision." *Blalock,* 483 F.2d at 775. Applying this legal framework, a careful review of the record reveals that the decision of the Commissioner is based upon an accurate application of the law and is supported by substantial evidence.

## VI. Analysis

In order to receive DIB, a claimant must: (1) be fully insured; (2) file an application; (3) meet the statutory definition for disability; and (4) have been disabled for five consecutive months. 20 C.F.R. § 404.315(a). In this case, Claimant's alleged disability onset date was February 1, 2007 and her date last insured was June 30, 2007.

Consequently, to receive DIB, Claimant must establish the existence of a disability during the five month period between February 1, 2007 and June 30, 2007.

Claimant submitted medical records documenting six treatment events that occurred prior to June 30, 2007. (Tr. at 325-33, 755-59). The first event, dated September 22, 2005, involved a visit by Claimant to Sacred Heart Hospital-Emerald Coast Primary for complaints of abrasions to her ring finger and a persistent cough. (Tr. at 325-33). Claimant was treated and released to home in stable condition. The five remaining records memorialize visits made by Claimant between April 17, 2007 and June 8, 2007 to her primary care physician, Dr. David W. Webb, at the Destin Primary Care Center. (Tr. at 755-59). These records contain Claimant's statement of charges and diagnoses, but do not include underlying objective medical findings, radiological results, laboratory data, or clinical notes elucidating the severity and persistence of Claimant's medical symptoms. Nonetheless, the records do show that Claimant received no injections and underwent no procedures during the five office visits.[2]

### A.    Failure to Develop Record

Claimant's assertion that the ALJ failed to fully and fairly develop the record is without merit. According to Claimant, Social Security regulations required the ALJ to "inquire fully into each alleged medical and/or mental illness" suffered by Claimant. Claimant contends that, notwithstanding this mandate, the ALJ made no investigation into Claimant's functional limitations "resulting from her back pain, arthritis, problems with left arm and knee, Epstein-Barr virus, possible benign fibroid tumors in the uterus." (ECF No. 14 at 7).

---

[2] The transcript reflects that Dr. Webb may have lost his medical license and was no longer in practice, making it difficult to obtain copies of the clinical notes he prepared during the office visits with Claimant. (Tr. at 28, 41).

The United States Supreme Court has held that "Social Security proceedings are inquisitorial rather than adversarial," *Richardson v. Perales,* 402 U.S. 389, 391, 91 S.Ct. 1420, 28 L.ED.2d 842 (1971); consequently, an ALJ "cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler,* 783 F.3d 1168, 1173 (4th Cir. 1986) (citing *Walker v. Harris,* 642 F.2d 712, 714 (4th Cir. 1981); *Marsh v. Harris,* 632 F.2d 296, 300 (4th Cir. 1980)). Instead, an ALJ has a responsibility to help gather the relevant information, explore the facts, and "inquire into issues when necessary for adequate development of the record." *Id.* Nevertheless, this duty does not require the ALJ to act as Claimant's counsel. *Clark v. Shalala,* 28 F.3d 828 (8th Cir. 1994); *see also Reed v. Massanari*, 270 F.3d 838 (9th Cir. 2001); *Haley v. Massanari*, 258 F.3d 742 (8th Cir. 2001); *Smith v. Apfel*, 231 F.3d 433 (7th Cir. 2000). An ALJ has the right to presume that claimant's counsel provided the key medical documentation available and presented claimant's strongest case for benefits. *Nichols v. Astrue,* 2009 WL 2512417, at *4 (7th Cir. 2009) (citing *Glenn v. Sec'y of Health and Human Servs.,* 814 F.2d 387, 391 (7th Cir. 1987)). The burden of producing medical evidence to establish disability rests with the claimant, not the ALJ. *See Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987) (explaining that "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so"); 20 C.F.R. § 404.1512(a) ("[Y]ou must furnish medical and other evidence that we can use to reach conclusions about your medical impairment[s]."). Thus, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).

When considering the adequacy of the record, a reviewing court must look for evidentiary gaps that resulted in "unfairness or clear prejudice" to the claimant. *Brown v. Shalala,* 44 F.3d 931, 935 (11th Cir. 1995). A remand or reversal is not warranted every time a claimant challenges the ALJ's development of the record. Instead, the decision of the ALJ will not be overturned "unless the claimant shows that he or she was prejudiced by the ALJ's failure. To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *See Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).

In this case, Claimant produced records regarding six treatment visits that she had prior to or during the relevant five-month time frame. Nothing in these records suggested that other medical treatment occurred during that period, or that significant documentation supporting Claimant's allegations existed but was not submitted. The first record, which was prepared in 2005, mentioned Claimant's history of chronic back pain. Otherwise, the relevant records were devoid of notations establishing that Claimant had a history of, was diagnosed with, or was ever treated for arthritis, back pain, knee and leg pain, Epstein-Barr virus, fibromyalgia, or uterine fibroids. To the contrary, the remaining medical evidence of record, all of which post-dated Claimant's insured status, substantiated that Claimant's first mention of any of these medical conditions occurred in mid 2008, and none of the conditions were addressed by medical providers until 2009 and 2010, at least two full years after expiration of Claimant's insured status. Moreover, Claimant identifies no specific evidentiary gap in the record and makes no demonstration that she could and would have adduced evidence that may have altered the ALJ's opinion.

A closer examination of Claimant's challenge to the Commissioner's decision

points to a slightly different criticism. Although Claimant articulates an alleged failure to adequately develop the record, in fact, she takes issue with the weight the ALJ accorded to her testimony and the opinion of Dr. Guberman. Having fully considered Claimant's objections to the weight allocated to her testimony and Dr. Guberman's opinion, the Court rejects them as unavailing. In regard to her testimony, Claimant's descriptions of her functional capabilities and activities during the relevant period simply do not validate her contention of a February 1, 2007 disability onset date. (Tr. at 35-48). The ALJ specifically asked Claimant to describe her physical and psychological conditions during the first half of 2007. Claimant testified that during this period, she worked part-time as a bartender and also operated her own cleaning business. According to Claimant, she scrubbed toilets and floors on her hands and knees, scrubbed refrigerators and ovens, cleaned woodwork and performed other demanding household tasks. She further testified that she took Xanax and Prozac for her emotional distress, yet did not say that she consulted with a psychiatrist, underwent counseling or psychotherapy, required inpatient psychiatric hospitalization, or sought psychological crisis intervention. Claimant indicated that starting in 2007, she began to have pain in her knees and increased pain in her shoulders and wrists which caused her to reduce the number of homes that she cleaned each day. Nonetheless, Claimant provided no evidence of medical treatment for her musculoskeletal complaints that was rendered before 2009. In her testimony, Claimant tied her pain symptoms to a shoulder surgery in 2000 and to neck and back injuries received in motor vehicle accidents, testifying that she had several car accidents in her life, including one in 2006 or 2007. (Tr. at 40). However, the record reflects that Claimant worked on a full-time basis long after the alleged surgery in 2000, and the only accident of record occurred in February 2009. (Tr.

at 304-314).

On February 7, 2009, Claimant presented to Sacred Heart Hospital in Florida complaining of a singe vehicle accident in which she swerved off the road and hit a tree. (Tr. at 304-14). After this accident, Claimant received a series of tests, including CT scans of her head and spine. The head CT scan was normal and the cervical spine scan showed some degenerative changes, with normal alignment and no acute fractures. (Tr. at 684). Follow-up films taken in August 2009 again showed a normal cervical and lumbar spine with the exception of some degenerative changes. (Tr. at 347-48). In December 2009, Claimant presented to St. Mary's Medical Center in Huntington, West Virginia complaining of dizziness, headache, neck pain, and left arm numbness. (Tr. at 650-51). A battery of tests were performed at that time with the following results: an EKG was normal; cardiac enzymes were normal; chest x-rays were normal; a head CT scan was normal; a cervical CT scan again showed degenerative changes with mild to moderate neural foraminal narrowing and normal alignment; and a venous ultrasound showed no evidence of deep vein thrombosis. (Tr. at 652, 659-67). Claimant was diagnosed with hypertension, anxiety, and paresthesia. She was discharged home in stable condition.

These records imply that Claimant did not have notable musculoskeletal symptoms until after the motor vehicle accident in 2009, well after expiration of her insured status. Based upon the records that are available, as well as the absence of records demonstrating diagnoses and treatment prior to June 30, 2007, the most plausible conclusion is that Claimant was not significantly impaired during the relevant time frame. Accordingly, the ALJ exercised appropriate judgment when he concluded that Claimant's impairments or combination of impairments did not significantly limit

her ability to perform basic work activities prior to her date last insured.

Claimant next contends that the ALJ erred by not giving more weight to the opinion of Dr. Bruce Guberman, a non-examining expert who reviewed Claimant's medical records at the request of her counsel. On November 15, 2010, Dr. Guberman prepared a written report of his review and completed a Residual Physical Functional Capacity Assessment. (Tr. at 764-766). Curiously, Dr. Guberman did not review the five records prepared during the five month period between February 1, 2007 and June 30, 2007. At the conclusion of his written report, Dr. Guberman opined that Claimant was "permanently and totally disabled for all types of employment with an effective onset date of June 30, 2007." (*Id.* at 766). In contrast, on April 19, 2010, Dr. Rogelio Lim, a consultant retained by the Disability Determination Section, performed his own evaluation of Claimant's records and concluded that "[t]he physical medical information is insufficient to determine [the merits of the] claim prior to [date last insured] of 6/30/2007." (Tr. at 456).

In his written decision, the ALJ addressed both of these opinions, explaining the reasons for discounting the opinion of Dr. Guberman and adopting the opinion of Dr. Lim. (Tr. at 14). The ALJ emphasized that Dr. Guberman's conclusion that Claimant was disabled was made long after the period in question, was not based on any medical evidence, and did not rely upon the existence of a longstanding condition, such as a birth defect; accordingly, the opinion was purely speculative. On the other hand, the sheer lack of evidence substantiating that Claimant had a severe medical impairment on or before June 30, 2007 was consistent with Dr. Lim's opinion that disability during the insured period could not be proven.

Having reviewed the transcript and the ALJ's written decision, the Court finds that the ALJ correctly applied the Social Security regulations in weighing the medical source opinions. Claimant offered no opinion from a treating or examining physician to establish the functional impact of her impairments as they existed on or before June 30, 2007. Accordingly, neither of the opinions before the ALJ was entitled to controlling weight or greater deference. In evaluating the opinions, the ALJ focused greatly on the supportability and consistency of each consultant's assessment with the evidence of record, as well as the strength of their analysis leading to the ultimate conclusions. Substantial evidence supports the ALJ's decision to reject Dr. Guberman's opinion. Dr. Guberman reviewed only one treatment record that pre-dated the expiration of Claimant's insured status. This record, the 2005 hospital chart memorializing Claimant's visit for abrasions to her ring finger, contained no documentation upon which a reasonable person could have concluded that Claimant suffered from an impairment that significantly affected her ability to work. In fact, Claimant was working on a full-time basis at the time of that admission. Dr. Guberman discussed in some detail various records, which he interpreted as showing persistent and somewhat uncontrolled hypertension, degenerative arthritic changes of the knees and spine, and a moderate sized hiatal hernia; however, all of the records he explicitly relied upon post-dated the relevant time frame by at least two years. (Tr. at 765-66). Yet, based upon these *post facto* records, and without further explanation, Dr. Guberman opined that Claimant had a set of disabling work-related limitations, which had an "effective onset" date of June 30, 2007. Given the conspicuous absence of a logical bridge that could connect the date of the treatment records to the alleged disability onset date, Dr. Guberman's opinion is entirely unpersuasive and was properly rejected.

### B.     Failure to Consider under "Combination of Impairments" Listing

Claimant argues that her medical problems "when combined, totally disable her and meet or exceed the combination of impairments listing provided by the Social Security Regulations for disability." (ECF No. 14 at 9). A determination of disability may be made at step three of the sequential evaluation process when a claimant's impairments meet or medically equal an impairment included in the Listing. The purpose of the Listing is to describe "for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525. Because the Listing is designed to identify those individuals who are disabled based upon medical criteria alone, regardless of their vocational factors, the SSA intentionally set the Listing criteria at a higher level of severity than that required to meet the statutory standard of disability when taking into account both medical and vocational factors. *Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). Given that the Listing establishes disability, "[f]or a claimant to show that his impairment matches a [listed impairment], it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530.

To demonstrate medical equivalency to a listed impairment, a claimant must present evidence that his impairment, unlisted impairment, or combination of impairments, is equal in severity and duration to all of the criteria of a listed impairment. *Id.* at 520; *See also* 20 C.F.R. §§ 404.1526. Under the applicable regulations, the ALJ may find medical equivalence in one of three ways: (1) if the claimant has an impairment that is described in the Listing, but (i) does not exhibit all of the findings specified in the listing, or (ii) exhibits all of the findings, but does not

meet the severity level outlined for each and every finding, equivalency can be established if the claimant has other findings related to the impairment that are at least of equal medical significance to the required criteria;[3] (2) if the claimant's impairment is not described in the Listing, equivalency can be established by showing that the findings related to the claimant's impairment are at least of equal medical significance to those of a similar listed impairment;[4] or (3) if the claimant has a combination of impairments, no one of which meets a listing, equivalency can be proven by comparing the claimant's findings to the most closely analogous listings.[5] If the findings are of at least equal medical significance to the criteria contained in any one of the listings, then the combination of impairments will be considered equivalent to the most similar listing. *Id.* However, the ALJ "will not substitute [a claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory finding" in determining whether a claimant's symptoms, signs, and laboratory findings are medically equal to those of a listed impairment. *Id.*

As the Supreme Court explained in *Zebley*, "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment … A claimant cannot qualify for benefits under the 'equivalency' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531. Ultimately, to determine whether a combination

---

[3] *Id.* §§ 404.1526(b)(1)

[4] *Id.* §§ 404.1526(b)(2)

[5] *Id.* §§ 404.1526(b)(3)

of impairments equals the severity criteria of a listed impairment, the signs, symptoms, and laboratory data of the combined impairments must be compared to the severity criteria of the Listing. "The functional consequences of the impairments ... irrespective of their nature or extent, *cannot* justify a determination of equivalence." *Id.* at 532 (citing SSR 83-19).

Here, Claimant fails to identify any listed impairment with criteria that might meet or equal the criteria of her combined impairments.[6] In any event, Claimant's challenge on this ground is flawed, because the ALJ never reached the third step in the sequential evaluation process. At the second step of the process, the ALJ was required to assess whether Claimant had a medically determinable impairment or combination of impairments that was severe. 20 C.F.R. 404.1520(c). An impairment or combination of impairments is severe when it significantly limits a claimant's ability to engage in basic work-related activities. An impairment or combination of impairments is not severe when the evidence demonstrates only a slight abnormality that has no more than a minimal effect on the claimant's ability to work. If the claimant does not have a severe impairment or combination of impairments, the evaluation ends at the second step and the claimant is adjudged not disabled. *Bowen v. Yuckert,* 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) ("The severity regulation requires the claimant to show that he has an 'impairment or combination of impairment which significantly limits' 'the abilities and aptitudes necessary to do most jobs.'") (quoting 20 C.F.R. §§ 404.1520(c), 404.1501(b)).

At the second step, the ALJ determined that Claimant had medically

---

[6] Although Claimant refers in her brief to "the combination of impairments listing," no such listing exists. (Tr. at 14).

determinable impairments that existed on or before June 30, 2007 including hypertension, gastroesophageal reflux disease, and anxiety. The ALJ made this generous determination based upon exceedingly sparse treatment records. (Tr. at 12). The ALJ then correctly addressed the issue of Claimant's mental impairment by applying the special technique. Noting that nothing in Claimant's testimony or the evidence of record reflected any problems in the four broad functional categories known as "paragraph B" criteria, the ALJ found that Claimant had no more than mild limitations in social functioning, activities of daily living, persistence, pace, and concentration and had no episodes of decompensation of extended duration. Thus, after considering the evidence of record, applying the appropriate standards, and performing the requisite two-step credibility assessment, the ALJ concluded that Claimant failed to establish that her impairments, separately or in combination, significantly limited her ability to engage in basic work activities. In reaching this conclusion, the ALJ properly applied the analytical framework set forth in the Social Security regulations and rulings and reached a determination that was supported by substantial evidence. To move on to step three in the sequential process, the severity regulation of step two requires the claimant make a threshold showing of a medically determinable impairment or combinations of impairments ***that is severe***. *Id.* at 146 ("The Act provides that '[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.'") (quoting 42 U.S.C. § 423(d)(5)(A)). In light of the limited and unimpressive evidence supplied by Claimant, the ALJ's determination that Claimant failed to make this initial showing of severity was supported by substantial evidence.

## VII. <u>Conclusion</u>

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision **IS** supported by substantial evidence. Therefore, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to transmit copies of this Order to all counsel of record.

        **ENTERED:** October 25, 2012.

        _____
        Cheryl A. Eifert
        United States Magistrate Judge